# Gamble *versus* Hepburn *et al.*, to use of Claxton's Administrator.

1. H. and L. sold to G. a tract of land. To secure the purchase-money G. gave them certain bonds and a mortgage. He paid all the bonds but one. L. assigned his interest in this one to H., and H. assigned his interest therein to C. On the refusal of G. to pay the bond, a scire facias was issued on the mortgage in the names of H. and L. to the use of C. The latter died after suit brought and her administrator was substituted. *Held*, that G. was not competent as a witness and was properly rejected.

2. L., one of the legal plaintiffs, was called by the defendant to prove matters that occurred while the legal plaintiffs were the owners of the bond. *Held*, that he was competent, under the Act of March 27th 1865, and the second section of the Act of 1869.

June 3d 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. WOODWARD, J., absent.

Error to the Court of Common Pleas of *Lycoming county:* Of May Term 1879, No. 133.

Scire facias sur mortgage issued by Huston Hepburn and C. M. Laporte for the use of Huston Hepburn, now for the use of R. B. Claxton and Crecy Claxton, his wife, in right of said wife, against Jacob Gamble. On the 16th day of May 1867, Huston Hepburn and C. M. Laporte sold to Jacob Gamble several tracts of timber-land and a saw-mill. They executed and delivered a deed to Gamble, and he gave them a mortgage to secure the purchase-money, and entered into possession of the premises. He paid all of the bonds secured by the mortgage, except the last, one of $500. Laporte assigned his interest in this last bond to Hepburn, on the 16th day of June 1871. Hepburn assigned his interest to Crecy Claxton. On the refusal of Gamble to pay the bond a scire facias was issued upon the mortgage, in the names of Huston Hepburn and C. M. Laporte, for the use of Crecy Claxton. Mrs. Claxton having died after suit was commenced, her administrator was substituted. The court rejected Gamble as a witness, on the ground that he was the defendant, and was not rendered competent by the Act of 1869. The defendant then called Laporte, one of the plaintiffs, who was also excluded by the court. The verdict was for plaintiffs, when defendant took this writ and, inter alia, assigned for error the rejection of the witnesses as above set forth.

*Henry C. Parsons* and *J. J. Metzgar*, for plaintiff in error.— The offer was to prove by Gamble a conversation with Laporte, one of the plaintiffs, prior to the assignment made by him of his interest in the bond, and prior, of course, to the assignment by Hepburn to Mrs. Claxton. The action was not upon the bond, but upon the mortgage. The mortgage was never assigned to Mrs. Claxton.

[Gamble v. Hepburn.]

The scire facias was issued in the names of Hepburn and Laporte, and was marked for the use of Mrs. Claxton. Hepburn and Laporte were the legal plaintiffs, and the offer was to prove their acts and declarations while they were the holders of the bond. They are both living, and are both competent witnesses; both could have been called to contradict Gamble. What principle, therefore, would be violated by permitting Gamble to be sworn, and who would be injured? Not the administrator of Mrs. Claxton, because she received the bond subject to all of the equities between the original parties.

The Act of 1865, and the second section of the Act of 1869, were passed in order to enable parties to call their adversaries and elicit the truth from them. We called Laporte and proposed to prove by him the whole transaction. The plaintiffs objected on the ground that Laporte was not made competent to testify under the "Act of 1869, or any subsequent act," and that the witness being the assignor of the bond, could not be called to invalidate it. There might be force in these objections if Laporte had offered himself as a witness, but he was called by the defendant, and the Act of 1865 and the Act of 1869 clearly permitted this to be done.

*Allen & Gamble* and *John Eutermarks*, for defendants in error. —The competency of Jacob Gamble, the defendant, as a witness must depend solely upon the Act of April 15th 1869, and yet the proviso to that act expressly declares that it "*shall not* apply to actions by or against executors, administrators or guardians." Nor can the substitution of the administrator, as a party to the record, after the institution of the suit affect the question of the defendant's competency, in his own behalf: Taylor v. Kelly, 30 P. F. Smith 97; Pratt v. Patterson, 31 Id. 114; Evans v. Reed, 28 Id. 415; Karns v. Tanner, 16 Id.; Noble v. Mortimer, 4 W. N. C. 300.

That the declarations of Laporte, the payee or obligee, after he had parted with his interest in the bond, could not be received in evidence to invalidate it in the hands of his assignee, it scarcely requires authorities to maintain: Eby v. Eby's Assignee, 5 Barr 435.

Mr. Justice STERRETT delivered the opinion of the court, June 25th 1879.

The court was clearly right in refusing to admit the defendant below as a witness in his own behalf. The scire facias was issued in the name of the mortgagees, Hepburn and Laporte, to the use of Crecy Claxton, assignee of the last bond secured by the mortgage. She subsequently died, and her administrator was substituted on the record as equitable plaintiff. In this form the case came to trial. Under the proviso to the Act of 1869, the defendant was incompetent to testify, in his own behalf, to anything that

[Gamble *v.* Hepburn.]

occurred prior to the death of Mrs. Claxton. His status, in this regard, was the same as though the act had never been passed. The competency imparted in general terms by the enacting clause of the first section to persons theretofore excluded on the ground of interest or policy of law, is limited by the proviso, which declares, among other things, that the act shall not apply to actions by or against executors, administrators or guardians. The learned counsel for the plaintiff in error contended, however, that inasmuch as the legal plaintiffs were both living and could be called to rebut his testimony, the defendant was competent to prove their acts and declarations while they were holders of the bonds, and that the equitable plaintiff had no right to complain because his intestate took the bond subject to all the equities between the original parties. So far as the legal plaintiffs are concerned, the soundness of this position might perhaps be conceded, but as to the equitable plaintiff, it assumes what may not be the fact, that the bond in the hands of Mrs. Claxton was subject to all the equities existing between the original parties. Before taking the assignment, it was her duty to inquire whether the obligor had any defence, and we have no right to assume that she neglected to do so. If she were living, and could testify that, upon inquiry, he informed her that he had no set-off or defence, the previous acts and declarations of the obligees would be of no avail. In this position of affairs, it is obvious that the living defendant would have an undue advantage over the personal representative of the deceased equitable plaintiff, that was never intended to be accorded to any party in interest. This principle has been recently ruled in a case not yet reported. But it is unnecessary to go beyond the act itself in search of a valid objection to the competency of the defendant in a case like the present. He is expressly excluded by the words of the act, and as was said in Taylor *v.* Kelly, 30 P. F. Smith 95, "a true enforcement of the statute requires us to hold that it means what it says, when it declares, 'this act shall not apply to actions by or against executors, administrators or guardians.'" Under the Act of April 1870, he would have been competent to testify to matters occurring since the death of Mrs. Claxton, and affecting the right of her administrator to recover, but he was not called for that purpose.

The question as to the competency of Laporte, one of the legal plaintiffs, called by the defendant, depends on the Act of March 27th 1865, and the second section of the Act of 1869, which provides that "a party to the record of any civil proceeding in law or equity, or a person for whose immediate benefit such proceeding is prosecuted or defended, may be examined as if under cross-examination, at the instance of the adverse party," &c. These enactments are just as clear and explicit in regard to the right of either party to call his adversary, as is the first section of the latter act in regard

to excluding a party, in a suit by or against an executor, administrator or guardian, from testifying in his own behalf.

As we understand the offer, it was to prove matters that occurred while the legal plaintiffs were the owners of the bond in suit, and not the acts or declarations of either of them after the assignments to Mrs. Claxton. The learned judge erred in holding that the witness was incompetent for the purpose stated in the offer, and for this alone the judgment must be reversed.

Judgment reversed, and a *venire facias de novo* awarded.